UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-06-19-B-W |
| | ) | |
| JACQUES CROLL | ) | |

**PRESENTENCE ORDER**

Because Jacques Croll's 1991 production of the child pornography he continued to criminally possess until 2005 constitutes relevant conduct under the Sentencing Guidelines, no *ex post facto* issue exists from an application of the current version of the Guidelines to his earlier production of the pornography in arriving at Mr. Croll's advisory sentencing range for illegal possession.

**I. Statement of Facts**

Jacques Croll admits possessing child pornography.[1]  The pornography Mr. Croll possessed in 2005 included photographs he took in the early 1990s of a 12 to 14-year-old boy engaged in sexual activity with Mr. Croll himself.  Because Mr. Croll sexually exploited a child by producing sexually explicit visual material, he is subject to the base offense level in U.S.S.G. § 2G2.1.[2]  However, if the 1991 version of the Guidelines applies, the base offense level is 25; if the current version applies, the base offense level is 32.[3]  Now facing sentencing, Mr. Croll

---

[1] On February 24, 2006, Mr. Croll pleaded guilty to two counts of possession of child pornography, violations of 18 U.S.C. § 2252A(a)(5)(B).  Count One alleged possession of a photograph; Count Two possession of a computer graphic image.
[2] To be precise, possession of child pornography is usually covered by U.S.S.G. § 2G2.2, but under § 2G2.2(c)(1), there is a cross reference to § 2G2.1, if the offense involved "causing . . . a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct" and "if the resulting offense level is greater than that determined [in § 2G2.2]."  U.S.S.G. § 2G2.2(c)(1).  These preconditions are met and § 2G2.1 applies.
[3] In its Revised PreSentence Investigation Report (PSR), the Probation Office (Probation) used the 1991 version of the Guidelines and, after imposing a two-level enhancement under § 2G2.1(b)(1), deducting two levels for acceptance of responsibility under § 3E1.1(a), and calculating his Criminal History Category as Category III,

objects to the application of the current version of the Guidelines to events that took place in the early 1990s.[4]

## II. Discussion

### A. Guidelines Analysis

In accordance with federal statute, U.S.S.G. § 1B1.11(a) requires sentencing courts to use the "Guidelines Manual in effect on the date that the defendant is sentenced." *See* 18 U.S.C. § 3553(a)(4)(A)(ii) ("[T]he court . . . shall consider . . . the guidelines . . . in effect on the date the defendant is sentenced."). However, if use of the current Guidelines Manual would violate the *Ex Post Facto* Clause of the United States Constitution, the court must use the version of the Manual "in effect on the date that the offense of conviction was committed." U.S.S.G. § 1B1.11(b)(1). In any event, the so-called "one book rule" obtains and the "Guidelines Manual in effect on a particular date shall be applied in its entirety." U.S.S.G. § 1B1.11(b)(2).

The Sentencing Guidelines reject the notion that every crime requires the same punishment. U.S.S.G. § 1A1.1, Editorial Note, Ch. One, Part A(3) ("Perfect uniformity – sentencing every offender to five years – destroys proportionality."). The Guidelines establish a comprehensive and uniform means by which a sentencing court calculates a sentencing range based on enumerated factors, including some events that occurred contemporaneously with the

---

Probation arrived at a total offense level of 25 and a Guidelines range of 70-87 months. It applied the ten year mandatory minimum, resulting in a sentence of 120 months. Using the same assumptions (except deducting three levels for acceptance) and applying the current version of the Guidelines, the total offense level is 31 for a sentencing range of 135-168 months. Whichever version applies, the sentencing range falls below the statutory maximum of 20 years. 18 U.S.C. § 2252A(b)(2).

     As the Defendant points out, the increased Guidelines sentence is a consequence of a series of changes to § 2G2.1 since 1995. *Def.'s Sent. Mem.* at 2-3 (Docket # 25). In 1996, the base offense level for violation of § 2G2.1(a) was increased from 25 to 27. U.S.S.G. Appendix C – Vol. 1, amendment 537 (November 1, 1996). In 2004, it was increased to 32. U.S.S.G. Supplement to Appendix C, amendment 664 (November 1, 2004).

[4] Current statutory law applies to the offense, not the law as it existed at the time Mr. Croll took the photographs or downloaded the pornography. Because the law criminalizes the possession of child pornography and Mr. Croll continued to possess the pornography on November 3, 2005, there is no *ex post facto* or fair warning issue, since he possessed the material well after the harsher penalty provisions of the PROTECT Act and the Guidelines became effective. PROTECT Act, Pub. L. No. 108-21, 117 Stat. 650 (approved on April 30, 2003 and codified in scattered sections of 18, 21, 28, 42 & 47 U.S.C.); U.S.S.G. Supplement to Appendix C, amendment 664 (November 1, 2004).

crime, such as the possession of a weapon during a bank robbery, and some prior to the crime, such as the defendant's criminal history. Specifically, § 1B1.3(a) clarifies that, in arriving at the sentencing range, the court should consider "relevant conduct" and make its calculations based on "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1). Section 1B1.3(a)(3) directs the court to consider "all harm that resulted from the acts and omissions specified in subsection[] (a)(1) . . . and all harm that was the object of such acts and omissions . . . ." U.S.S.G. § 1B1.3(a)(3). Here, the Guidelines consider not simply the possession of child pornography, but also whether the defendant caused a minor to engage in sexually explicit conduct to produce the pornography. U.S.S.G. § 2G2.2(c)(1). As production must precede possession, the Guidelines mandate consideration, as relevant conduct, of events that predate the actual commission of the crime.[5]

### B. The *Ex Post Facto* Clause and Relevant Conduct

The *ex post facto* provision of the Constitution "bars the retrospective application of laws that materially disadvantage the defendant." *United States v. Forbes*, 16 F.3d 1294, 1301 (1st Cir. 1994); *see* U.S. CONST. art. I, § 9, cl. 3; U.S. CONST. art. I, § 10, cl. 1. The first question is whether an *ex post facto* issue is presented. Mr. Croll quotes *Miller v. Florida* as setting forth the "two critical elements" that must be present: "first, the law 'must be retrospective, that is, it

---

[5] The Defendant's position has a certain irony. By engaging in production of child pornography long ago and retaining possession of it for many years, the Defendant would have the Court lessen his sentencing range. By contrast, if the defendant had produced the pornography moments before its discovery, the current Guidelines would undoubtedly apply. But, because he produced the pornography in 1991 and continued to possess it for fourteen years, he argues that he is entitled to be sentenced under the less stringent penalties applicable in 1991. As the First Circuit has written, sometimes the law causes results that "might strike lay persons as peculiar," see *United States v. Reccko*, 151 F.3d 29, 31 (1st Cir. 1998), but if the United States Constitution were to mandate a lesser punishment for the long-term possession of child pornography and a harsher punishment for its short term possession, this result would at least be counterintuitive.

3

must apply to events occurring before its enactment'; and second, 'it must disadvantage the offender affected by it.'" 482 U.S. 423, 430 (1987) (quoting *Weaver v. Graham*, 450 U.S. 24, 29 (1981)). Further, as Mr. Croll notes, the First Circuit has stated that "[f]or *ex post facto* purposes, the federal courts have assumed that . . . changes in [the Guidelines'] content should be viewed as the equivalent of statutory changes - - indeed, in some cases they are formally directed by Congress." *United States v. Lata*, 415 F.3d 107, 110 (1st Cir. 2005). So far, so good, for Mr. Croll.

Nevertheless, Mr. Croll's argument fails because in imposing a sentence within the statutory maximum that takes into account relevant conduct, the Court is not punishing Mr. Croll "for [the] crime[] of which he was not convicted," but rather it is increasing his sentence for "the manner in which he committed the crime of conviction."[6] *United States v. Watts*, 519 U.S. 148, 154 (1997). As the First Circuit explained in *United States v. Bennett*, 37 F.3d 687, 699 (1st Cir. 1994), there is a distinction between the "offense of conviction" and "relevant conduct" and the *Ex Post Facto* Clause does not apply to relevant conduct.

*United States v. Dawn*, 129 F.3d 878 (7th Cir. 1997) is highly instructive in explaining why this is so. In *Dawn*, the defendant possessed child pornography that he himself produced. *Id.* at 880. He objected to the same cross-reference applicable here; Mr. Dawn claimed that because he produced the pornography outside the United States, the cross-reference could not be applied. *Id.* at 881. The Seventh Circuit made short work of his argument:

---

[6] Mr. Croll strenuously argues that this case is controlled by *Miller v. Florida*, 482 U.S. 423 (1987). *Def.'s Sent. Mem.* at 2-5 (Docket # 25). However, in *Miller*, the United States Supreme Court addressed sentencing guidelines that created a presumption that a defendant should be sentenced within a calculated range and if the judge wished to depart, he had to give clear and convincing reasons in writing for doing so. 482 U.S. at 426. *Miller* concluded that the Florida guidelines had "the force and effect of law" and, therefore, implicated the *Ex Post Facto* Clause. *Id.* at 435. It is unclear whether post-*Booker*, the advisory United States Sentencing Guidelines have "the force and effect of law" under *Miller*. But, here, the *Ex Post Facto* Clause is not implicated in any event, because Mr. Croll's production of pornography is relevant conduct, not the offense of conviction.

4

> Time and again, we have been presented with arguments that the Sentencing Guidelines, when they take into account conduct beyond the offense of conviction, deprive the defendant of the panoply of constitutional and other rights associated with criminal trials. Time and again, those arguments have failed. The cases make clear that sentencing judges may look to the conduct surrounding the offense of conviction in fashioning an appropriate sentence, regardless of whether the defendant was ever charged with or convicted of that conduct, and regardless of whether he could be. The lesson of these cases is that taking into account conduct related to the offense of conviction in sentencing is not the same thing as holding the defendant criminally culpable for that conduct. The offense of conviction remains paramount, in terms of both the statutory minimum and maximum punishments and what is relevant for sentencing purposes. Indeed, the very purpose of looking to circumstances beyond the offense of conviction is to decide what degree of punishment to impose within the typically broad range authorized by the criminal statute, by determining what a particular defendant actually did. In this way a felon who uses a gun to commit assault, for example, is punished more harshly than one who simply keeps a gun underneath his mattress for protection, notwithstanding that both are convicted of the same offense. However much it may look like the defendant is being sentenced for a different offense - - and the cross-referencing provisions of the Guidelines often make it appear very much as though he were - - he is actually being sentenced solely for the crime or crimes of which he was convicted.

*Id.* at 883-84 (internal citations omitted). Thus, as *Dawn* explained, the "cross-reference merely implements the common sense notion that a receiver or possessor who has manufactured the pornography in his possession is both more culpable and more dangerous than one who has received or possessed the pornography and no more." *Id.* at 884; *see also United States v. Wilkinson*, 169 F.3d 1236, 1238-39 (10th Cir. 1999).

In *United States v. Amirault*, 224 F.3d 9, 13-15 (1st Cir. 2000), the First Circuit speedily dispatched a similar *ex post facto* argument, where a defendant convicted of possession of child pornography objected to the sentencing court's consideration of his sexual assaults against his two minor sisters-in-law twenty years before, and his retention of numerous nude photographs of them following the assaults. After quoting *Witte v. United States*, 515 U.S. 389, 401 (1995), *Amirault* stated succinctly: "[T]o the extent that the sentence imposed on the appellant inflicted a harsher punishment, it did so not with respect to the earlier sexual assaults but, rather, with

5

respect to his current crime: the possession of child pornography. It flows inexorably that no *ex post facto* problem exists." 224 F.3d at 15. If sexual assaults twenty years ago and the defendant's retention of nude pictures since then present no *ex post facto* issue, when considered as relevant conduct, neither does this Defendant's production in the early 1990s and subsequent retention of the pornography he was convicted of possessing in 2005.[7] Mr. Croll had "fair warning at the time he commit[ted] his later acts that the prior ones may or will be used in determining his sentence for the latter ones." *United States v. Regan*, 989 F.2d 44, 48 (1st Cir. 1993). To avoid the increased penalties for possession of child pornography that he produced, all Mr. Croll had to do was to rid himself of the pornography before the new Guidelines provisions became effective. This he manifestly did not do and, as a consequence, he is now subject to the provisions of the law and the version of the Guidelines in effect when he violated the criminal law.

### III. Conclusion

No *ex post facto* or fair warning issue exists from considering as relevant conduct under the current Guidelines the Defendant's 1991 production of the child pornography he criminally possessed in 2005.

John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 18th day of July, 2006

---

[7] Although it may be argued that a prior conviction is different than prior uncharged conduct, the same general principle applies. In *United States v. Forbes*, responding to an assertion that the use of prior convictions to trigger the aggravated felony enhancement violated the *Ex Post Facto* Clause, the First Circuit wrote: "Forbes is being punished for the crime of unlawful reentry, in violation of § 1326. The enhancement provision increases the punishment for *this* crime. It does not affect the punishment that Forbes received for the crimes he committed prior to the effective date of the Act." 16 F.3d 1294, 1302 (1st Cir. 1994) (emphasis in original).